RECOMMENDED FOR PUBLICATION
Pursuant to Sixth Circuit I.O.P. 32.1(b)

File Name: 22a0257p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

───────────────

UNITED STATES OF AMERICA,

    *Plaintiff-Appellee*,

v.

GEORGE HARRISON,

    *Defendant-Appellant*.

> No. 21-6146

───────────────

Appeal from the United States District Court for the Eastern District of Kentucky at Lexington.
No. 5:19-cr-00143-1—Karen K. Caldwell, District Judge.

Decided and Filed: December 1, 2022

Before: SUTTON, Chief Judge; COLE and THAPAR, Circuit Judges.

───────────────

## COUNSEL

**ON BRIEF:** Patrick F. Nash, NASH MARSHALL, PLLC, Lexington, Kentucky, for Appellant. Sangita K. Rao, UNITED STATES DEPARTMENT OF JUSTICE, Washington, D.C., Emily K. Greenfield, UNITED STATES ATTORNEY'S OFFICE, Lexington, Kentucky, for Appellee.

  THAPAR, J., delivered the opinion of the court in which SUTTON, C.J., joined in full and COLE, J., joined in part. COLE, J. (pp. 9–16), delivered a separate opinion concurring in Parts I and II and in the judgment.

───────────────

## OPINION

───────────────

  THAPAR, Circuit Judge. George Harrison was convicted of drug and firearms offenses after an informant filmed him selling methamphetamine. He now challenges his conviction and sentence. We affirm.

I.

On three occasions, Harrison sold methamphetamine to B.B., a confidential informant who recorded the transactions on video.  Based in part on those videos, police arrested Harrison.

B.B. passed away before trial, so he was unable to testify about the controlled buys.  As a substitute, the government played B.B.'s videos of the transactions for the jury, over Harrison's objection, though recordings of statements from B.B. to law-enforcement personnel were excluded on Sixth Amendment grounds.  The jury convicted Harrison on three counts of distributing methamphetamine, one count of possessing with intent to sell 500 grams or more of methamphetamine, and one count of being a felon in possession of a firearm.

At sentencing, the district court agreed with the government that Harrison's prior conviction for complicity to commit murder was a serious violent felony, rejecting Harrison's argument to the contrary.  Thus, Harrison was subject to a sentencing enhancement, raising his mandatory minimum on the possession-with-intent-to-sell count from ten years to fifteen.  21 U.S.C. § 841.  So the district court sentenced Harrison to a total of fifteen years' imprisonment followed by ten years' supervised release.

Harrison now appeals.  First, he argues that the introduction of B.B.'s videos violated his Sixth Amendment right to confront his accusers.  Second, he claims the district court improperly characterized his prior conviction as a violent felony at sentencing.

II.

The Confrontation Clause guarantees every criminal defendant the right "to be confronted with the witnesses against him."  U.S. Const. amend. VI.  Ordinarily that means the defendant must be permitted to cross-examine the prosecution's witnesses at trial.  *Delaware v. Fensterer*, 474 U.S. 15, 18 (1985).  But when a witness can't testify at trial and hasn't been cross-examined, the Confrontation Clause forbids entry of the witness's statements that are:  (1) testimonial and (2) hearsay.  *United States v. Gibbs*, 506 F.3d 479, 486 (6th Cir. 2007).

B.B.'s statements to Harrison and other non-law-enforcement personnel are testimonial.  A statement is testimonial when its purpose is to be used against the defendant.  *Crawford v.*

*Washington*, 541 U.S. 36, 51–52 (2004). And we've previously held that since confidential informants' statements are intended for use against the defendant, they are testimonial. *United States v. Cromer*, 389 F.3d 662, 670 (6th Cir. 2004).

But B.B.'s statements to Harrison and non-law-enforcement personnel aren't hearsay. Hearsay is generally any statement made out of court that's used in court for its truth. Fed. R. Evid. 801(c)(2). And though B.B.'s statements were made out of court, they weren't used in court for their truth.

In fact, it's not clear from the record that the government used B.B.'s statements at all. True, the videos were admitted into evidence. But B.B.'s statements were only a small part of the videos, and the government didn't make those statements part of its case. Instead, the government focused on Harrison's statements and actions, which are undisputedly admissible, not B.B.'s.

Further, to the extent that B.B.'s statements were used in court, they weren't used for their truth. They were used only to give context to Harrison's admissible words and actions. *See United States v. Jones*, 205 F. App'x 327, 342 (6th Cir. 2006). For instance, during the second controlled buy, Harrison and B.B. discussed Harrison's methamphetamine. Harrison described where he got the drugs, what they looked like when he received them, and how he handled them before selling them. B.B. compared the vacuum-sealed packaging Harrison's drugs came in with other methods of packaging he'd seen. His statement was about how various drugs were packaged, not about Harrison's drug dealing. And the government didn't offer that statement for its truth; the type of packaging B.B. had seen elsewhere was irrelevant to the government. The government only admitted it as part of a "reciprocal and integrated" conversation in which Harrison described receiving and selling methamphetamine. *See Jones*, 205 F. App'x at 342.

Harrison hasn't pointed to any of B.B.'s statements in the videos that were used for their truth. And since there is no indication in the record that the government offered any of B.B.'s statements for their truth, Harrison hasn't shown a Confrontation Clause violation.

Harrison disagrees, reasoning that hearsay is an out-of-court statement offered "for the truth of the matter asserted," that "the matter asserted" by the government at trial was Harrison's

guilt, and that B.B.'s statements were offered as part of the case to prove Harrison's guilt. Thus, Harrison argues B.B.'s statements were hearsay. Harrison is right that we often characterize hearsay as a statement offered to establish "the truth of the matter asserted." *See Crawford*, 541 U.S. at 60 n.9. But "the matter asserted" means the matter asserted by the *statement*, not the matter asserted by the *government*. *See United States v. King*, 865 F.3d 848, 850–51 (6th Cir. 2017). Indeed, almost any out-of-court statement the government offers in court is admitted to prove the government's case in some way. Otherwise, there would be no reason to introduce the statement at all.

Because B.B.'s statements in the videos weren't offered for their truth, they weren't hearsay. So their introduction into evidence didn't violate Harrison's rights under the Confrontation Clause.

## III.

Harrison also argues that the district court improperly enhanced his sentence based on his prior Kentucky conviction for complicity to commit murder. Specifically, he contends that complicity to commit murder isn't a "serious violent felony" because it doesn't involve the "use, attempted use, or threatened use of force." *See* 18 U.S.C. § 3559(c)(2)(F)(ii). We disagree.

### A.

First, some background. One of Harrison's convictions was for possession of methamphetamine with intent to sell. The statutory minimum penalty for that offense is typically ten years' imprisonment. 21 U.S.C. § 841. But when, as here, the conviction involves 500 grams or more of a mixture containing methamphetamine, and the defendant has a prior conviction for a "serious violent felony," then the statutory minimum increases to fifteen years. *Id.*

A "serious violent felony" includes any offense described by 18 U.S.C. § 3559(c)(2).[1] 21 U.S.C. § 802(58). As relevant here, section 3559(c)(2) defines "serious violent felony" as any

---

[1]To be a serious violent felony, the prior conviction also must have a sentence longer than 12 months. 21 U.S.C. § 802(58). But it's undisputed that Harrison served for longer than that.

offense with a maximum sentence of ten years or more that "has as an element the use, attempted use, or threatened use of physical force against the person of another."   18 U.S.C. § 3559(c)(2)(F)(ii).  Harrison doesn't dispute that complicity to commit murder has a maximum sentence greater than ten years.  So the enhancement applies if complicity to commit murder "has as an element the use, attempted use, or threatened use of physical force against the person of another." *Id.*

In deciding this issue, we're obligated to apply the categorical approach.  So the facts underlying Harrison's complicity conviction don't matter; instead, we ask whether the elements of Kentucky's complicity statute include the use of force.  *See Descamps v. United States*, 570 U.S. 254, 261 (2013).  One of the requirements of a conviction for complicity is that the underlying offense actually occurs.  *See* Ky. Rev. Stat. § 502.020(1) (complicity liability only once the "offense [is] committed"); *id.* § 502.020(2) (requiring proof of the criminal result).  So the elements of complicity to commit murder include the elements of murder.  *Id.* § 507.020(1).  Thus, we look to the elements of both complicity and murder to find the use-of-force requirement.

B.

With all that in mind, the question we ask under the categorical approach is:  Is it possible to be found guilty of complicity to commit murder without proof of any "use of physical force"?

No.  Complicity to commit murder always requires the use of physical force, because murder always requires the use of physical force.  A person is only guilty of murder in Kentucky if he causes the death of another, either intentionally or by "wantonly engag[ing] in conduct which creates a grave risk of death." *See* Ky. Rev. Stat. § 507.020.  And a person can't cause the death of another intentionally or wantonly without using physical force.

A victim dies only if some "physical force" damages his body so severely that the body no longer functions.  That physical force—the physical force exerted on the body to cause injury—is what courts look to when categorizing crimes of violence.  *See Johnson v. United States*, 559 U.S. 133, 140 (2010); *Raybon v. United States*, 867 F.3d 625, 632 (6th Cir. 2017).  The physical force exerted on the body isn't always the same as the force applied directly by the

criminal. For instance, a shooting involves physical force not because of the force it takes for the shooter to pull the trigger, but because of the force it takes for the bullet to injure the victim's body.

With that understanding of physical force in mind, a murderer must always "use" physical force to cause death. In explaining why, we need not consider every conceivable method of committing murder. *See, e.g.*, *Moncrieffe v. Holder*, 569 U.S. 184, 191 (2013); *United States v. Rumley*, 952 F.3d 538, 550 (4th Cir. 2020). And to be sure, a murderer can employ force in a variety of ways. But "use of force" can refer to both direct uses, like strangling the victim, and indirect uses, like pulling a trigger to shoot the victim. *United States v. Castleman*, 572 U.S. 157, 170–71 (2014). So in every murder, the murderer uses physical force in some way to cause a death.

That's true even when murder is carried out by omission rather than commission. For instance, if a parent intentionally fails to give his child food, his child will die of starvation. At first blush, the parent's failure to act doesn't seem forceful. But the type of omission that constitutes murder—omission that intentionally or wantonly causes the death of another—still uses physical force as section 3559 requires. The malicious parent uses the force that lack of food exerts on the body to kill his child.

That interpretation of "use of force" reflects the general principle that in criminal law, omission in the face of a legal duty is a type of action. *See, e.g.*, 2 Wayne R. LaFave, *Substantive Criminal Law* § 15.4(b) (3d ed. 2022 Update); Model Penal Code § 2.01. When Congress passed section 3559, we presume it did so with the background principles of criminal law in mind. *See Samantar v. Yousuf*, 560 U.S. 305, 320 & n.13 (2010). So it makes sense that section 3559 would incorporate the criminal-law understanding that omissions can be types of actions.[2]

---

[2]It may well be that that this understanding of "use of physical force" in crimes of omission comes from a specialized legal meaning instead of ordinary meaning. *See United States v. Scott*, 990 F.3d 94, 127–33 (2d Cir. 2021) (Menashi, J., concurring in part and concurring in the judgment). And "when a statute employs a term with a specialized legal meaning relevant to the matter at hand, that meaning governs." *Moskal v. United States*, 498 U.S. 103, 121 (1990) (Scalia, J., dissenting).

Because murder requires the use of physical force, a Kentucky conviction for complicity to commit murder is a serious violent felony under section 3559. *See* Cole Concurrence at 7–8. Seven of our sister circuits have interpreted the same use-of-force phrase in the Armed Career Criminal Act (ACCA) and Sentencing Guidelines § 4B1.2 in the same way. *See United States v. Baez-Martinez*, 950 F.3d 119, 130–33 (1st Cir. 2020); *United States v. Scott*, 990 F.3d 94 (2d Cir. 2021) (en banc); *Rumley*, 952 F.3d at 549–51; *United States v. Waters*, 823 F.3d 1062, 1066 (7th Cir. 2016); *United States v. Peeples*, 879 F.3d 282, 286–87 (8th Cir. 2018); *United States v. Ontiveros*, 875 F.3d 533, 536–38 (10th Cir. 2017); *Thompson v. United States*, 924 F.3d 1153, 1158 (11th Cir. 2019); *see also United States v. Ruska*, 926 F.3d 309, 312 (6th Cir. 2019) (holding that "because both laws share essentially the same definition (if not the same titles), we can define a 'serious violent felony' under section 3559(c) the same way we define a 'violent felony' under the ACCA" (cleaned up)); *United States v. Patterson*, 853 F.3d 298, 305 (6th Cir. 2017) (explaining that the ACCA's language is nearly identical to the Guidelines language, so we interpret them the same way). Only one circuit disagrees. *United States v. Mayo*, 901 F.3d 218, 226–30 (3d Cir. 2018) (holding that Pennsylvania's aggravated-assault statute isn't a violent felony under the ACCA).

Because complicity to commit murder is a violent felony under section 3559, the district court properly enhanced Harrison's sentence.

## C.

Harrison has two final objections. First, he argues that a recent Supreme Court opinion precludes application of the enhancement here. *See Borden v. United States*, 141 S. Ct. 1817 (2021). The *Borden* plurality held that crimes requiring only recklessness don't require the "use of physical force." *Id.* at 1834. But, as Harrison concedes, complicity to commit murder requires more than recklessness—at the very least it requires wantonness under "circumstances manifesting an extreme indifference to human life." Ky. Rev. Stat. § 507.020. That's a more culpable mental state than recklessness, and the Supreme Court explicitly noted that its decision in *Borden* didn't extend that far. 141 S. Ct. at 1825 n.4. Indeed, other circuits have concluded that *Borden* didn't extend to mental states more culpable than recklessness. *See United States v. Begay*, 33 F.4th 1081, 1093–95 (9th Cir. 2022) (en banc); *Alvarez-Linares v. United States*,

44 F.4th 1334, 1344 (11th Cir. 2022); *United States v. Manley*, 52 F.4th 143, 150–51 (4th Cir. 2022). So the exception recognized in *Borden* doesn't help Harrison here.

Second, Harrison argues that a defendant convicted of complicity to commit murder doesn't have to use force himself, so even if murder requires the use of physical force, complicity to commit murder doesn't. Not so. Section 3559 requires "the use, attempted use, or threatened use of force." 18 U.S.C. § 3559(c)(2)(F)(ii). It doesn't require the *defendant's* use, attempted use, or threatened use of force. As explained, the Kentucky complicity statute requires that the underlying crime occur. When the underlying crime requires use of physical force, and the complicity statute requires the underlying crime occur, "then the complicity conviction necessarily includes the physical force element." *United States v. Johnson*, 933 F.3d 540, 547 (6th Cir. 2019), *abrogated on other grounds by Borden*, 141 S. Ct. 1817. It's enough that complicity to commit murder requires use of force by someone; that someone didn't have to be Harrison.

\*  \*  \*

We affirm.

———————————

## CONCURRENCE

———————————

COLE, Circuit Judge, concurring in part (Parts I and II) and concurring in the judgment. Because he contends that complicity to commit murder is not a "serious violent felony," Harrison objects to his enhanced sentence based on a prior conviction for this felony. While I disagree, and therefore agree with the majority that we should affirm Harrison's sentence, I write separately as to Part III to address a lingering culpability question, which bleeds into the use-of-force analysis.

## A.  Legal Standard

We review whether a prior conviction qualifies as a serious violent felony de novo. *See United States v. Mitchell*, 743 F.3d 1054, 1058 (6th Cir. 2014). An offense qualifies as a "serious violent felony" under this sentencing enhancement if it (1) resulted in a term of imprisonment of more than twelve months, 21 U.S.C. § 802(58), and (2) satisfies any of section 3559(c)(2)(F)'s three clauses:  the enumerated offense clause, 18 U.S.C. § 3559(c)(2)(F)(i), the elements clause, *id.* § 3559(c)(2)(F)(ii), or the residual clause, *id.* I agree with the district court's analysis as to how the state law crime underlying Harrison's prior conviction for complicity to commit murder criminalizes more conduct than the relevant federal enumerated offense, and therefore does not fall within the enumerated offense clause. (*See* Op. & Order, R. 157, PageID 662–63.)  And neither party argues for the residual clause's applicability, nor do I take on the task of determining whether such clause is unconstitutionally vague following recent Supreme Court decisions. *See Johnson v. United States*, 576 U.S. 591 (2015); *United States v. Davis*, 139 S. Ct. 2319 (2019); *Sessions v. Dimaya*, 138 S. Ct. 1204 (2018).

So, Harrison can only be subject to the sentencing enhancement if his prior conviction for complicity to commit murder satisfies the elements clause. His offense, then, must have "as an element the use, attempted use, or threatened use of physical force against the person of another." 18 U.S.C. § 3559(c)(2)(F)(ii).  In so doing, we apply a "categorical approach," focusing strictly on whether the statutory definition of complicity to commit murder necessarily

requires such force, not the factual manner in which Harrison violated the statute in this particular circumstance. *United States v. Ruska*, 926 F.3d 309, 311 (6th Cir. 2019). "We assume that the defendant was convicted based on the least culpable conduct criminalized under the predicate offense." *United States v. Butts*, 40 F.4th 766, 770 (6th Cir. 2022).

## B. Level of Culpability

Following the Supreme Court's decision in *Borden v. United States*, 141 S. Ct. 1817 (2021), we start with an analysis of the mens rea required for Harrison's prior felony. After *Borden*, the elements clause includes offenses committed by "purposeful and knowing acts, but excludes reckless conduct." *Id.* at 1826. Because the use of force—the pinnacle requirement of the elements clause—must be "directed" or "targeted" at another individual, a mere reckless use of force cannot suffice. *Id.* at 1825–27. Therefore, offenses requiring "only a mens rea of recklessness—a less culpable mental state than purpose or knowledge" cannot be categorically violent felonies under the elements clause. *Id.* at 1821–22 (abrogating *United States v. Verwiebe*, 874 F.3d 258, 264 (6th Cir. 2017), which held that a mental state of ordinary recklessness sufficed).

So, it is clear that if complicity to commit murder requires only a mens rea of mere recklessness, Harrison cannot be subjected to an enhanced sentence under the elements clause. But what is less clear is exactly what level of culpability is required for such an enhancement, and on this, the parties disagree. Harrison reads *Borden* as ruling out any offense with "a less culpable mental state than purpose or knowledge," (Appellant Br. 18), which would exclude Kentucky murder. The government asserts that because *Borden* requires only that the mens rea be above mere recklessness, the "extreme recklessness" required by Kentucky murder—and by extension, complicity to commit murder—is sufficient. (Appellee Br. 29.) The district court, in line with the government, determined that *Borden* only excludes offenses requiring ordinary recklessness, therefore leaving the door open for an offense with any slightly higher mens rea to qualify as a serious violent felony, which it says includes the Kentucky murder statute. (Op. & Order, R. 157, PageID 657.)

Importantly, *Borden* explicitly withheld comment on this question, acknowledging a spectrum of culpability between recklessness—not enough for a serious violent felony—and knowledge—sufficient for a serious violent felony—not before the Court in that case. *Borden*, 141 S. Ct. at 1825 n.4.

Nor has our circuit answered directly. Recently, we required the "knowing or intentional use, attempted use, or threatened use of force" for an underlying offense to be a "crime of violence" under the similarly-worded Sentencing Guidelines career-offender enhancement. *Butts*, 40 F.4th at 771. A year prior, we quoted *Borden* as requiring "a purposeful or knowing mental state—a deliberate choice of wreaking harm on another, rather than mere indifference to risk." *United States v. Brenner*, 3 F.4th 305, 307 (6th Cir. 2021) (quoting *Borden*, 141 S. Ct. at 1830). Albeit instructive inasmuch as both focus on whether an offense requires purpose or knowledge, neither is dispositive here, as both ultimately found the underlying offenses could be committed with a mere reckless use of force. *See Butts*, 40 F.4th at 772; *Brenner*, 3 F.4th at 307. So, we turn to the specifics of the Kentucky statutes at issue.

Bearing in mind that we must "presume that the conviction rested upon nothing more than the least of the acts criminalized" by the Kentucky complicity statute, *Moncrieffe v. Holder*, 569 U.S. 184, 190–91 (2013), we focus our analysis there.

"Complicity is simply the means of committing another crime," and is an avenue of imposing liability on an accomplice as if they had committed the principal offense. *K.R. v. Commonwealth of Ky.*, 360 S.W.3d 179, 187 (Ky. 2012). An individual can be found guilty of complicity based on either the principal actor's conduct itself or its result. Ky. Rev. Stat. § 502.020; *see Tharp v. Commonwealth of Ky.*, 40 S.W.3d 356, 360 (Ky. 2000) (describing the "two separate and distinct theories" for complicity liability). The former theory—the conduct theory—is not precluded from being a serious violent felony under *Borden* because it requires the accomplice possess the specific intent that the principal actor commit the criminal act—here, murder. *Rogers v. Commonwealth of Ky.*, 315 S.W.3d 303, 310 (Ky. 2010); *see also* Ky. Rev. Stat. Ann. § 502.020, 1974 Kentucky Crime Commission/LRC Commentary. But whether the latter theory—the results theory—has the requisite mens rea requires more digging, as an accomplice need only act with the mens rea required by the offense charged, which may or may

not reach the culpability threshold required by *Borden*. *See* Ky. Rev. Stat. Ann. § 502.020, 1974 Kentucky Crime Commission/LRC Commentary. Any uncertainty regarding exactly which theory Harrison was convicted under is irrelevant. (*See* Op. & Order, R. 157, PageID 652.) So, we go one layer deeper and identify the lowest level of culpability required to be convicted of Kentucky murder—and therefore complicity to commit murder—to then evaluate if this is sufficient post-*Borden*.

An individual can be convicted of murder under Kentucky law if they caused the death of another person with one of two accompanying culpabilities: (1) "intent to cause the death," or (2) "wanton[] engage[ment] in conduct which creates a grave risk of death." Ky. Rev. Stat. § 507.020. The former unambiguously requires a high enough level of culpability to be a serious violent felony after *Borden*, while the latter is less clear. Because the least culpable mental state for Kentucky murder is "wantonness manifesting extreme indifference to human life," *Kruse v. Commonwealth of Ky.*, 704 S.W.2d 192, 194–95 (Ky. 1985), the question is then if this wantonness precludes complicity to commit murder from being a serious violent felony under *Borden*.

When placed on the spectrum of culpability, the wantonness provision of Kentucky's murder statute falls in the range between ordinary recklessness and knowledge. *See* Ky. Rev. Stat. § 501.020(3). A conviction under the wantonness provision requires (1) "a substantial and unjustifiable risk of death to human life"; (2) a "conscious[] disregard[] [of] that risk"; (3) "a gross deviation from the standard of conduct that a reasonable person would [have observed] in the situation"; and (4) "circumstances manifesting extreme indifference to human life." Ky. Rev. Stat. Ann. § 507.020, 1974 Kentucky Crime Commission/LRC Commentary. It is this fourth prong that distinguishes Kentucky murder's wantonness requirement from mere recklessness. *Cf. Borden*, 141 S. Ct. at 1824 (defining ordinary recklessness as the first three of these four prongs). It is also this fourth prong that distinguishes murder from manslaughter under Kentucky law. *See* Ky. Rev. Stat. Ann. § 507.020, 1974 Kentucky Crime Commission/LRC Commentary (comparing § 507.020 and § 507.040). So, through the additional requirement of an "extreme indifference to human life," the Kentucky murder statute requires more than mere recklessness.

Kentucky courts have considered acting with such an extreme indifference to human life to be as culpable as knowing or intentional conduct. *See e.g.*, *Brown v. Commonwealth of Ky.*, 975 S.W.2d 922, 923 (Ky. 1998) ("To punish wanton conduct as murder, it must be conduct as culpable as intentional murder."). As has the Supreme Court. *See e.g.*, *Tison v. Arizona*, 481 U.S. 137, 157 (1987) ("This reckless indifference to the value of human life may be every bit as shocking to the moral sense as an 'intent to kill.' Indeed it is for this very reason that the common law and modern criminal codes alike have classified behavior such as occurred in this case along with intentional murders."). So, too, have authorities cited by both of these courts. *See id.* (citing G. Fletcher, Rethinking Criminal Law § 6.5, pp. 447–48 (1978)) ("[I]n the common law, intentional killing is not the only basis for establishing the most egregious form of criminal homicide[.] For example, the Model Penal Code treats reckless killing, 'manifesting extreme indifference to the value of human life,' as equivalent to purposeful and knowing killing" (first alteration in original)); *see Brown*, 975 S.W.2d at 923–24 (citing Kentucky Penal Code commentary and the Model Penal Code).

While wanton homicide is in theory unintentional, wantonness sufficient for a conviction of murder equates to a level of culpability described as one "assimilated to [intention]" "that cannot fairly be distinguished . . . from homicides committed [intentionally]." Ky. Rev. Stat. Ann. § 507.020, 1974 Kentucky Crime Commission/LRC Commentary (alterations in originals) (quoting Model Penal Code, § 201.2, Comment 2 (Tent. Draft No. 9, 1959)). In upholding the wanton murder provision against a void-for-vagueness challenge, the high court of Kentucky endorsed the American Law Institute's note that "wanton killing must exhibit *purposeful or knowing* indifference . . . evidencing a depraved heart." *Brown*, 975 S.W.2d at 924 (emphasis added) (quoting A.L.I., Model Penal Code & Commentaries, Part II, § 210.2 (1980 ed.)). In aggregate, commentary and interpretation make clear that Kentucky murder requires something a far cry from mere indifference to risk, instead placing the culpability required for Kentucky murder as effectively on par with purposeful or knowing.

Under a categorical approach, we must also look "beyond the theoretical to the reality of prosecutions." *Moncrieffe*, 569 U.S. at 191. If there is "a realistic probability, not a theoretical possibility, that [Kentucky] would apply its statute to conduct that falls outside . . . the post-

*Borden* definition of a crime of violence," then such a conviction is not a crime of violence under the elements clause. *Butts*, 40 F.4th at 772–73 (internal quotations omitted) (quoting *Gonzalez v. Duenas-Alvarez*, 549 U.S. 183, 193 (2007). As there appears to be no such case where an individual has been convicted of complicity to commit murder based on pure recklessness, we are unable to say that such a reasonable probability exists, even if such a theoretical possibility does, as Harrison posits. This is particularly true as the line between wanton murder—functionally indistinguishable from knowledge or intent—and wanton manslaughter—more like mere recklessness—turns on the "extreme indifference to human life" prong, inasmuch as the trier of fact endorses something above mere recklessness by convicting someone of murder as opposed to manslaughter. *See* Ky. Rev. Stat. Ann. § 507.020, 1974 Kentucky Crime Commission/LRC Commentary.

Therefore, while I do not categorically conclude that *Borden* requires only a mens rea above mere recklessness, based on the above, I conclude that Kentucky murder—and therefore complicity to commit murder—is not precluded from being a serious violent felony under *Borden*.

## C.  Use, Attempted Use, or Threatened Use of Force

Because Harrison's prior conviction is not precluded from being a serious violent felony under *Borden* based on its mens rea alone, we move on to determine if the least culpable murder "has as an element the use, attempted use, or threatened use of physical force against the person of another." 18 U.S.C. § 3559(c)(2)(F)(ii). We again take a categorical approach, analyzing both the elements of complicity and murder.

A conviction for conspiracy requires the commission of the underlying offense—here, murder—by another actor. *See* Ky. Rev. Stat. § 702.020. A conviction for murder necessarily involves the actual killing of a person. *See* Ky. Rev. Stat. § 507.020. And the actual killing of another person necessarily involves the use of force capable of causing physical pain or injury. *See Thompson v. United States,* 924 F.3d 1153, 1158 (11th Cir. 2019), *cert. denied*, 140 S. Ct. 2769 (2020) (reasoning that because the statute "criminalizes the actual killing of another person, the level of force used must necessarily be capable of causing physical pain or injury."); *United*

*States v. Peeples*, 879 F.3d 282, 287 (8th Cir. 2018) ("Because it is impossible to cause bodily injury without force, it would also be impossible to cause death without force."). Therefore, since a conviction for murder under the Kentucky statute necessarily involves the use of force, so does a conviction for complicity to commit murder. *See United States v. Johnson*, 933 F.3d 540 (6th Cir. 2019), *abrogated on other grounds by Borden*, 141 S. Ct. That the "complicity" aspect of "complicity to commit murder" can occur without the defendant's use of force is immaterial, because the "murder" aspect requires as much.

This force need not be direct physical force; indirect means and acts of omission can still be considered uses of force. As the majority notes, the "use of force" involved in a shooting that results in death is the force from the bullet into the victim's body, not the pulling of the trigger. *United States v. Castleman*, 572 U.S. 157, 170–71 (2014). Same goes for the "use of force" involved in death by starvation through the intentional withholding of food from a child or death by putting poison in another's drink. *See id.* at 171; *United States v. Rumley*, 952 F.3d 538, 551 (4th Cir. 2020); *United States v. Sanchez*, 940 F.3d 526, 535 (11th Cir. 2019). The resulting death is the use of force, which was "exerted by and through concrete bodies," as is the case after a trigger has been pulled or poison has been sprinkled. *Castleman*, 572 U.S. 157 at 170.

And the force need not be exerted by the defendant. All the elements clause requires is that the offense—here, complicity to commit murder—necessarily involve the use of force. *See* 18 U.S.C.A. § 3559(c)(2)(F)(ii). Whether Harrison himself exerted force, either through the complicity or the murder, is not the question posed by this requirement. *See United States v. Dinkins*, 928 F.3d 349, 359 (4th Cir. 2019). A conviction for complicity to commit murder requires the actual killing of another, which requires the use of force. This alone is sufficient so long as the offense is not otherwise precluded from being a serious violent felony.

\* \* \*

Kentucky murder requires a level of culpability almost indistinguishable from knowledge or intent, and necessarily entails the use of force, either by an affirmative act or act by omission. Therefore, Kentucky murder is a "serious violent felony" under the sentencing enhancement relevant here. Because a conviction for complicity to commit murder encompasses the elements

of murder, such a conviction then also qualifies as a serious violent felony. Therefore, the district court's sentencing enhancement was appropriate, and I would also affirm.