NOT RECOMMENDED FOR PUBLICATION
File Name: 23a0089n.06

Nos. 21-5062/5288/5472

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

| | | |
|---|---|---|
| MONTEZ HALL (21-5062); KEAIRUS WILSON (21-5288); RONDARIUS LORENZO WILLIAMSON (21-5472), | ) ) ) ) | **FILED** Feb 14, 2023 DEBORAH S. HUNT, Clerk |
| Petitioners-Appellants, | ) ) | ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE MIDDLE DISTRICT OF TENNESSEE |
| v. | ) ) ) | |
| UNITED STATES OF AMERICA, | ) ) | |
| Respondent-Appellee. | ) ) ) | OPINION |

Before: GRIFFIN, BUSH, and MURPHY, Circuit Judges.

MURPHY, Circuit Judge. Montez Hall, Keairus Wilson, and Rondarius Williamson each brutally shot and killed at least one person for gang-related reasons. They were convicted of, among other crimes, using a firearm during a "crime of violence" in violation of 18 U.S.C. § 924(c) or (j). When identifying the "crime of violence" that supported these § 924 convictions, the government alleged that Hall, Wilson, and Williamson murdered their victims for the purpose of maintaining a position in a "racketeering" "enterprise" in violation of 18 U.S.C. § 1959(a).

After their convictions, the Supreme Court found unconstitutional part of § 924's definition of "crime of violence." *See United States v. Davis*, 139 S. Ct. 2319, 2336 (2019). An offense now qualifies as a "crime of violence" only if it "has as an element the use, attempted use, or threatened use of physical force against the person or property of another[.]" 18 U.S.C. § 924(c)(3)(A). Hall, Wilson, and Williamson argue that the crime underlying their § 924 convictions (the murder

offense in § 1959(a)) does not meet this "elements" clause. They assert that § 1959(a) covers defendants who commit a murder "by omission"—such as parents who let their children starve to death—and that this type of murder does not involve the requisite use of force. We recently rejected an identical argument, explaining that even murders by omission use physical force. *See United States v. Harrison*, 54 F.4th 884, 889 (6th Cir. 2021). *Harrison* controls here. We thus affirm the district court's denial of relief to Hall, Wilson, and Williamson under 28 U.S.C. § 2255.

I

Perhaps best known for its longstanding feud with the Crips, the criminal gang known as the Bloods originated in Los Angeles but now has many affiliates in other places, including Nashville, Tennessee. *See United States v. Wilson*, 579 F. App'x 338, 340 (6th Cir. 2014). Hall, Wilson, and Williamson belonged to two Nashville affiliates. *See id.* at 340–42. Over the course of a year, their gang activity left at least three people dead in that city.

In June 2008, Wilson was chatting with fellow gang members outside a public-housing complex when they observed Michael Goins, a member of a rival gang, get out of a car and walk toward the apartments. *Id.* at 341. Wilson followed Goins and shot him three times in the back. *Id.* Goins fell to the ground. Wilson shot him twice more at point-blank range. *Id.* When Goins reached for his gun, another person shot at him while Wilson fled. *Id.* Goins died of his wounds.

The next month, Wilson, Hall, and three others were driving the Nashville streets in search of members of other gangs. *Id.* They spotted Alexandra Franklin, the girlfriend of a rival gang member, dropping someone off at an apartment complex. *Id.* The gang members followed Franklin for half a mile. *Id.* Wilson, Hall, and another person then fired some 20 rounds at her car when she was stopped at a stop sign. *Id.* Franklin tried to run from her car but fell to the ground, having been shot several times. *See id.* She succumbed to her injuries days later. *See id.*

In May 2009, Williamson decided to attend a high-school graduation at Tennessee State University's basketball arena. *Id.* at 342. Williamson and fellow gang members watched the ceremony while congregating in the arena's upper levels. *Id.* At some point, Williamson remarked to his companions that he "was going to get somebody[.]" Tr., R.1903, PageID 10231. Near the ceremony's end, he headed down the stairs toward the lobby and exit. *Id.*, PageID 10233. He then fired a gun several times at Andreus Taylor, a member of a rival gang. *Id.*, PageID 10233–34. Taylor fled outside and fell down a hill. *Wilson*, 579 F. App'x at 342. He soon died. *Id.*

A grand jury indicted Hall, Wilson, Williamson, and dozens of other Bloods for many crimes. Hall pleaded guilty to two counts: conspiring to participate in racketeering activity, in violation of 18 U.S.C. § 1962(d), and using a firearm during a "crime of violence" in violation of 18 U.S.C. § 924(c). As the "crime of violence" underlying Hall's § 924(c) offense, the indictment charged him with murdering Franklin in aid of a racketeering enterprise, in violation of 18 U.S.C. § 1959(a). The district court sentenced him to 360 months' imprisonment.

Wilson and Williamson stood trial. The jury convicted Wilson of eight counts. *See Wilson*, 579 F. App'x at 342. As relevant now, the jury convicted him of two counts of committing murder in aid of a racketeering enterprise in violation of § 1959(a) for the murders of Goins and Franklin. *See id.* The jury also convicted Wilson of two counts of using a firearm during a "crime of violence" that resulted in death, in violation of § 924(j), and one count of conspiring to use a firearm during a "crime of violence" in violation of § 924(o). *Id.* The "crimes of violence" underlying these § 924 convictions were the two counts of murder in violation of § 1959(a). We vacated two of Wilson's other convictions on direct appeal but otherwise affirmed the judgment. *See Wilson*, 579 F. App'x at 348. The district court ultimately sentenced him to five concurrent life sentences and a concurrent 20-year sentence.

The jury convicted Williamson of seven counts. *See id.* at 342. Like Wilson, he was found guilty of committing murder in aid of a racketeering enterprise in violation of § 1959(a) for the murder of Taylor. He was also found guilty of using a firearm during a "crime of violence" that resulted in death in violation of § 924(j), and of conspiring to use a firearm during a "crime of violence" in violation of § 924(o). The "crime of violence" underlying his § 924 convictions was again the murder count in violation of § 1959(a). *See Wilson*, 579 F. App'x at 342. The district court sentenced Williamson to, among other things, three concurrent life sentences. We affirmed his convictions and sentences. *See id.* at 348.

Hall, Wilson, and Williamson filed motions to collaterally attack their sentences under 28 U.S.C. § 2255. The district court rejected all of their claims.

After they completed their first round of collateral proceedings, the Supreme Court issued a decision relevant to their crime-of-violence convictions under § 924. Section 924 defines "crime of violence" to mean either a crime that "has as an element the use, attempted use, or threatened use of physical force against the person or property of another" or a crime that, "by its nature, involves a substantial risk that physical force against the person or property of another may be used in the course of committing the offense." 18 U.S.C. § 924(c)(3). In *Davis*, the Court found the second ("residual") clause unconstitutionally vague. *See* 139 S. Ct. at 2336.

In light of this development, separate panels of our court granted Hall, Wilson, and Williamson permission to file second or successive § 2255 motions on the ground that the "crime of violence" underlying their § 924 convictions—murder in violation of § 1959(a)—might no longer qualify as a "crime of violence."

In three similar orders, the district court denied their second § 2255 motions. The court noted that it must apply the "categorical approach" and consider the least-culpable conduct that

could underlie § 1959(a)'s murder offense. According to Hall, Wilson, and Williamson, this offense might cover a murder by omission—that is, a murder by a defendant who has a duty to help a victim and whose failure to do so causes the victim's death. Even accepting this view, the court reasoned that murder by omission always uses force against the victim and so qualifies as a crime of violence. We granted certificates of appealability on this legal question, which we review de novo. *See Manners v. United States*, 947 F.3d 377, 379 (6th Cir. 2020).

II

On appeal, Hall, Wilson, and Williamson argue that the murder offense in 18 U.S.C. § 1959(a) does not qualify as a "crime of violence" under § 924. The government initially responds that we need not reach the merits of this legal issue. It interprets the terms of Hall's plea agreement to bar him from raising the issue in these collateral proceedings. *See Portis v. United States*, 33 F.4th 331, 334–39 (6th Cir. 2022). As for Wilson and Williamson, the government argues that this issue cannot change their terms of imprisonment because the district court imposed concurrent life sentences on them for unrelated convictions. It thus asks us to avoid reaching the issue in their cases using the "concurrent sentence doctrine." *See Kassir v. United States*, 3 F.4th 556, 561, 564 (2d Cir. 2021). We need not address the government's procedural arguments, however, because our recent precedent makes clear that the collateral attacks fail on their merits.

The offense underlying all of the challenged § 924 convictions (which we will call "racketeering murder") bars "murder" "for the purpose of" "maintaining or increasing position in an enterprise engaged in racketeering":

> (a) Whoever, as consideration for the receipt of, or as consideration for a promise or agreement to pay, anything of pecuniary value from an enterprise engaged in racketeering activity, or for the purpose of gaining entrance to or maintaining or increasing position in an enterprise engaged in racketeering activity, murders, kidnaps, maims, assaults with a dangerous weapon, commits assault resulting in

serious bodily injury upon, or threatens to commit a crime of violence against any individual in violation of the laws of any State or the United States, or attempts or conspires so to do, shall be punished—(1) for murder, by death or life imprisonment, or a fine under this title, or both[.]

18 U.S.C. § 1959(a)(1).

To qualify as a "crime of violence" after *Davis*, this offense must have "as an element the use, attempted use, or threatened use of physical force against the person or property of another[.]" 18 U.S.C. § 924(c)(3)(A). The Supreme Court has established several ground rules for us to decide whether an offense falls within this "elements" clause. We typically undertake a "categorical approach" by identifying the statutory elements of a crime and asking whether every individual who completes these elements *necessarily* uses (or attempts or threatens to use) physical force. *See United States v. Taylor*, 142 S. Ct. 2015, 2020 (2022). The Court has defined physical force as force "capable of causing physical pain or injury to another person." *Stokeling v. United States*, 139 S. Ct. 544, 553 (2019) (quoting *Johnson v. United States*, 559 U.S. 133, 140 (2010)). If the hypothetically least-forceful way to commit the offense does not require the use of this force, the offense is not a "crime of violence." *See Taylor*, 142 S. Ct. at 2021. That is true even if the specific defendant in the specific case used significant force as a factual matter. *See id.* at 2020.

Yet § 1959(a) requires us to alter this typical inquiry by applying what has come to be known as the "modified categorical approach." *See Mathis v. United States*, 579 U.S. 500, 505–06 (2016). Section 1959(a) qualifies as a so-called "divisible" statute because it creates "multiple crimes" in one subsection. *Mathis*, 579 U.S. at 505; *see Manners*, 947 F.3d at 379–80. It lists different ways to commit the racketeering offense as "elements in the alternative" (for example, murder, kidnapping, or assault with a dangerous weapon), and it identifies different punishments for these different crimes. *Mathis*, 579 U.S. at 505; *Manners*, 947 F.3d at 379–80; *see* 18 U.S.C.

6

§ 1959(a)(1)–(6). The government thus must charge a defendant with one of the specific actions, and the jury must find the required elements for this action beyond a reasonable doubt. *See Mathis*, 579 U.S. at 504–06. To identify the specific action of which a defendant was convicted under this type of divisible statute, we look to a "limited class of documents" such as the indictment, plea agreement, and jury instructions. *Id.* at 505–06. We then undertake the usual categorical approach for the narrower offense that the defendant committed. *Id.* at 506.

In these appeals, all agree that the government charged Hall, Wilson, and Williamson with (and that two of them were convicted of) racketeering *murder* under § 1959(a). *See* Indictment, R.1147, PageID 3394, 3398, 3403. We thus must identify the elements for that narrower offense. At first blush, this identification seems easy: a defendant must have "murder[ed]" an individual, this murder must have been "in violation of the laws of any State or the United States," and the murder must have been for a particular "purpose," such as "maintaining or increasing position in an enterprise engaged in racketeering activity[.]" 18 U.S.C. § 1959(a).

Nevertheless, a more complex picture emerges when one asks what § 1959(a) means by its use of the verb "murders." Does this undefined term require courts to identify the usual elements of murder in "the generic sense in which the" word was used when Congress passed this statute? *Taylor v. United States*, 495 U.S. 575, 598 (1990). The Supreme Court has taken that approach when Congress has used other "terms of art" like "burglary." *See id.*; *see also Scheidler v. Nat'l Org. for Women, Inc.*, 537 U.S. 393, 409–11 (2003). Or, alternatively, does the statute's requirement that the murder be "in violation of the laws of any State or the United States" incorporate the elements of the state murder law from the state in which the murder occurred? The parties seemingly adopted this approach during these criminal proceedings. A "peek at the [record] documents" shows that Hall, Wilson, and Williamson were charged with, and that the jury in two

7

of their cases was instructed on, only Tennessee first-degree murder (not federal generic murder). *Mathis*, 579 U.S. at 518 (citation omitted); *see* Tenn. Code Ann. § 39-13-202(a)(1).

Ultimately, we need not identify the elements of racketeering murder under § 1959(a). The parties now agree on appeal that a conviction required the government to prove *both* that a defendant's conduct qualified as federal "generic" murder as defined by the federal courts *and* that this conduct fell within the murder laws of the relevant state. *Cf. United States v. Keene*, 955 F.3d 391, 398–99 (4th Cir. 2020). The parties also agree that a defendant could commit either type of murder through an omission in the face of a legal duty to act—as when parents cause their children to die by intentionally starving them. They point out that federal generic murder might incorporate murder by omission because that conduct qualified as "murder" in most jurisdictions when Congress passed § 1959(a). *See Biddle v. Commonwealth*, 141 S.E.2d 710, 714–15 (Va. 1965) (citing cases). They add that Tennessee has long adopted murder by omission too. *See State v. Barnes*, 212 S.W. 100, 100–01 (Tenn. 1919); *State v. Bordis*, 1994 WL 672595, at *12–13 (Tenn. Crim. App. Dec. 1, 1994). Given these agreements, we may simply assume that a defendant could violate § 1959(a) through a murder by omission.

Even if § 1959(a) prohibited this type of murder, though, the modified categorical approach might treat it as a distinct "offense" with different "elements" from a more traditional murder. *Mathis*, 579 U.S. at 505. After all, murder by omission requires the jury to make an additional factual finding—that the defendant owed a legal "duty" to the decedent. *Barnes*, 212 S.W. at 100; *see* 1 Wayne R. LaFave, *Substantive Criminal Law* §§ 6.2, 6.2(a) (2d ed. 2008); *cf. Jones v. United States*, 308 F.2d 307, 310–11 (D.C. Cir. 1962). Here, moreover, Hall did not admit in his plea agreement to owing any legal duty to Franklin. Likewise, the district court did not instruct the jury that it had to find that Wilson owed legal duties to Franklin and Goins or that Williamson owed a

8

legal duty to Taylor. So the record documents may well confirm that these individuals were *not* convicted of murder by omission. *See Mathis*, 579 U.S. at 518–19. But the government did not raise this argument that murder by omission qualifies as a distinct crime with different elements from traditional murder. We thus will leave that question for another day. *See id.* at 517.

These appeals instead turn on whether murder by omission necessarily includes the use of "physical force" within the meaning of § 924's crime-of-violence definition. Contrary to the current claims of Hall, Wilson, and Williamson, we held that it did in *Harrison*. There, we asked whether a Kentucky conviction for complicity to commit murder involved the use of force within the meaning of a materially identical "elements" clause in another sentencing provision. *See* 54 F.4th at 888–89; *compare* 18 U.S.C. § 924(c)(3)(A), *with* 18 U.S.C. § 3559(c)(2)(F)(ii). We held that "murder always requires the use of physical force," even if a defendant commits the murder "by omission rather than commission." *Harrison*, 54 F.4th at 889. And we even explained that the hypothetical crime on which Hall, Wilson, and Williamson now rely (parents starving their children to death) used sufficient "force." *Id.* We lastly noted that at least seven other circuit courts had interpreted similar "elements" clauses in the same way. *Id.* at 890 (citing cases).

In response, Hall, Wilson, and Williamson admit that they cannot distinguish *Harrison*. But they say that we should not follow that case because it conflicts with our earlier decisions in *United States v. Bass*, 315 F.3d 561, 565 (6th Cir. 2002), and *Dunlap v. United States*, 784 F. App'x 379, 388–89 (6th Cir. 2019). They are mistaken. *Dunlap*, an unpublished decision, lacks precedential force. *See United States v. Sanford*, 476 F.3d 391, 396 (6th Cir. 2007). It cannot trump *Harrison* for that reason alone, so we need not decide whether the two cases conflict.

*Bass* also does not change things. In a single (unreasoned) sentence, it suggested that a Tennessee child-neglect conviction might not fall within the career-offender guideline's analogous

elements clause. 315 F.3d at 565. But *Bass* went on to hold that this conviction qualified as a "crime of violence" under the guideline's (then-applicable) "residual" clause. *Id.* at 565–66. *Bass* thus had no reason to conclusively decide any elements-clause questions. *See Wright v. Spaulding*, 939 F.3d 695, 701–02 (6th Cir. 2019).

In sum, we have no legally valid ground to disavow *Harrison*. And that case's binding holding requires us to reject the argument that a murder by omission falls outside the elements clause. *See United States v. Brown*, 957 F.3d 679, 683 (6th Cir. 2020). The district court thus properly denied relief in these three § 2255 proceedings.

We affirm.