NOT RECOMMENDED FOR PUBLICATION
File Name: 23a0494n.06

No. 22-3801

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

**FILED**
Dec 04, 2023
KELLY L. STEPHENS, Clerk

UNITED STATES OF AMERICA,

    Plaintiff-Appellee

v.

TERRY LEE JACKSON, SR.,

    Defendant-Appellant.

)
)
)
)
)
)
)
)
)
)

ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF OHIO

OPINION

Before: WHITE, STRANCH, and NALBANDIAN, Circuit Judges.

**HELENE N. WHITE, Circuit Judge.** Defendant-Appellant Terry Lee Jackson, Sr. appeals his convictions of one drug-distribution and three drug-possession charges, arguing that the district court violated his rights under the Confrontation Clause when it admitted statements made by a confidential informant and that the evidence was insufficient to convict him. We AFFIRM.

**I.**

Officers from the Elyria Police Department began investigating Jackson around February 2019, after two confidential informants (C.I.s) brought them information suggesting that Jackson was selling drugs in local hotels. Specifically, a C.I. referred to as C.I. 297 told police that Jackson was dealing drugs out of the Knights Inn in Elyria.

Police arranged a controlled buy between C.I. 297 and Jackson on February 26, 2019. To set up the buy, the C.I. called Jackson and relayed a "coded message" that the C.I. was coming to the hotel to buy drugs. R.88, PID 507. Police took "pre-buy and post-buy precautions," including searching the C.I. to ensure the C.I. did not have money, drugs, or contraband; giving the C.I. a

"covert video device" that could also transmit audio; and photocopying the $40 used for the buy. *Id.* at PID 504–05. The C.I. went to the hotel room and met with Jackson. Throughout the transaction, the police surveilled the street and the hotel room door. The C.I. met with Jackson, "got drugs, came back to a predetermined location to meet [police]," and "turned over those drugs." *Id.*

During this meeting, the C.I. carried the recording device that captured audio and video. The video—which is shaky and has an incorrect time stamp[1]—shows the C.I. in the car with detectives; the C.I. walking to the Knights Inn and entering Jackson's room; the C.I. and Jackson exchanging a few words inside the room; the C.I. placing money on the table in front of Jackson; and the C.I. leaving the room and returning to the police car, where an officer says, "Let me get that from you." The officer testified that at that point, he was asking for the crack cocaine in the C.I.'s hand, which the C.I. then handed to the officers.

The officers searched the C.I. again for any drugs, money, or contraband, paid the C.I., and let the C.I. go. They then sought and received a search warrant for the hotel room, and executed the warrant later that afternoon. When they did, officers found the same $40 they had given the C.I. to purchase the drugs on the table in front of Jackson. They also found and weighed three bags of drugs—17 grams of crack cocaine, 1.5 grams of methamphetamine, and 4 grams of a heroin/fentanyl mix—and recovered other drug paraphernalia. The government's witnesses testified that this quantity of drugs is consistent with distribution, and that drug users typically carry less than a gram.

---

[1] According to the government, the time stamp was incorrect because the video device lost power and officers forgot to reset the clock before using it. The video shows a police vehicle's clock with the correct time, and an officer announced the correct time on the recording.

Before and at trial, Jackson objected to the admission of the audio portion of the controlled-buy recording, arguing that the C.I.'s statements on the recording were inadmissible hearsay. The government had prepared a transcript of the recording, and Jackson may have objected to its admission as well. The district court overruled Jackson's objections and the government played the video for the jury. The district court also permitted the jury to see the government's written transcription, with the caveat that the jury must decide for itself whether the transcription was accurate.

Jackson moved for judgment of acquittal after the close of the government's case and renewed the motion at the close of evidence. The district court denied the motion both times, finding that the government had presented sufficient evidence for the jury to convict on each count. The jury convicted Jackson of one count of distribution of a controlled substance, and three counts of possession with intent to distribute a controlled substance, all in violation of 21 U.S.C. §§ 841(a)(1) and (b)(1)(C).

## II.

Jackson first argues that the admission of the C.I.'s recorded statements on the video of the controlled buy violated his rights under the Confrontation Clause. The Confrontation Clause ensures that "[i]n all criminal prosecutions, the accused shall enjoy the right . . . to be confronted with the witnesses against him." U.S. Const. amend. VI. Admitting out-of-court testimonial statements that are "offered to establish the truth of the matter asserted" violates this clause unless "(1) the declarant is unavailable and (2) the defendant had a prior opportunity to cross-examine the declarant." *United States v. Boyd*, 640 F.3d 657, 665 (6th Cir. 2011) (citing *Crawford v. Washington*, 541 U.S. 36, 53–54 (2004)). A declarant's statement is testimonial if "a reasonable person in the declarant's position would anticipate his statement being used against the accused in

investigating and prosecuting the crime." *United States v. Cromer*, 389 F.3d 662, 675 (6th Cir. 2004).

We review a claim that a district court violated a defendant's Confrontation Clause right de novo. *Boyd*, 640 F.3d at 665. However, such claims are subject to a harmless-error analysis and we will not set aside convictions that are otherwise valid if we can "confidently say, on the whole record, that the constitutional error was harmless beyond a reasonable doubt." *United States v. McGee*, 529 F.3d 691, 697 (6th Cir. 2008) (quoting *Delaware v. Van Arsdall*, 475 U.S. 673, 681 (1986)).

The parties agree that the C.I.'s statements on the recording were testimonial. Even so, "the admission of recordings involving a C.I. and a defendant [does] not violate the Confrontation Clause" if "the portions not involving the C.I. were party admissions and the portions involving the C.I. were offered not for the truth of the matters asserted but to 'give meaning to the admissible responses of [the defendant].'" *United States v. Jones*, 205 F. App'x 327, 342 (6th Cir. 2006) (quoting *United States v. Sexton*, 119 F. App'x 735, 741–43 (6th Cir. 2005)); *see also United States v. Harrison*, 54 F.4th 884, 887 (6th Cir. 2022).

The relevant conversation between the C.I. and Jackson, as transcribed by the government, is:

CI:     What do I owe you?
[Jackson spoke with an unknown female on speakerphone.]
CI:     Here, just because, you know (Unintelligible (UI))
TJ:     (UI) spend that money with your n[****], man.
CI:     Alright, that's what I owe you, right?  And then (UI) here you go.  Now.
TJ:     (UI) I got you.
CI:     Alright, maybe.  (UI) Rachel, uh (UI) she's almost (UI) but she's, uh, in the middle of something so (UI) back on that one.  Oh, was that the bag, are those all the chips that you (UI) from the bag?

TJ:     Um-hmm

CI:     You got a baggie? No? (UI)

TJ:     (UI)

CI:     56 . . . (UI) I'll be back for the (UI)

TJ:     Um-hmm . . . (UI)

CI:     (UI) Be careful.

Jackson argues that the C.I.'s statements were offered for the truth of the matter asserted "because the statements provided proof Mr. Jackson distributed cocaine base." Appellant Br. 13–14. "But 'the matter asserted' means the matter asserted by the *statement*, not the matter asserted by the *government*." *Harrison*, 54 F.4th at 888. "[A]lmost any out-of-court statement the government offers in court is admitted to prove the government's case in some way. Otherwise, there would be no reason to introduce the statement at all." *Id.*

A review of the statements suggests some may have been admitted for their truth. For example, the CI tells Jackson "I'll be back for" something, and the government elicited testimony at trial that the CI was telling Jackson that the CI would be back for more drugs.

However, even if some statements are seen as factual assertions offered for their truth, any error was harmless. The video shows the C.I. place money on the table, leave, and return to a police vehicle where an officer asks for what he testified was crack cocaine. The audio—while giving some context—was not necessary for the jury to understand that the money was placed on the table in exchange for drugs. Looking at the government's evidence "on the whole," we are convinced that any error in admitting the few challenged statements "was harmless beyond a reasonable doubt." *McGee*, 529 F.3d at 697 (quoting *Van Arsdall*, 475 U.S. at 681).

Accordingly, the district court's admission of the C.I.'s statements on the video was not a reversible Confrontation Clause error.

**III.**

Jackson's sufficiency-of-the-evidence claims also fail. He argues that the government presented a "flawed case" and, accordingly, "no rational factfinder could find Mr. Jackson guilty." He relies on the poor quality of the recording device, the fact that the officers could not fully search the C.I. before and after the controlled buy, and the prosecution's failure to present the actual bills used for the purchase at trial.

A court assessing the sufficiency of the evidence considers "whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *United States v. Copeland*, 321 F.3d 582, 600 (6th Cir. 2003) (quoting *Jackson v. Virginia*, 443 U.S. 307, 319 (1979)). We review the claim de novo and draw "all reasonable inferences in support of the jury's verdict." *United States v. Stewart*, 729 F.3d 517, 526 (6th Cir. 2013) (quoting *United States v. Wettstain*, 618 F.3d 577, 583 (6th Cir. 2010)). We "will reverse a judgment for insufficient evidence 'only if the judgment is not supported by substantial and competent evidence upon the record as a whole.'" *Id.* (quoting *Wettstain*, 618 F.3d at 583). "[A] defendant claiming insufficiency of the evidence bears a very heavy burden." *United States v. Jackson*, 473 F.3d 660, 669 (6th Cir. 2007) (quoting *United States v. Abboud*, 438 F.3d 554, 589 (6th Cir. 2006)).

To convict Jackson on Count One, the government had to prove Jackson distributed a controlled substance with the intent to do so. *United States v. Villarce*, 323 F.3d 435, 439 (6th Cir. 2003); 21 U.S.C. § 841(a)(1). The government's evidence showed that the C.I. walked to Jackson's hotel room with pre-photocopied bills. Officers searched the C.I. for drugs before and after, and the C.I. was surveilled and carrying a recording device the entire time. The C.I. placed the bills in front of Jackson and returned with cocaine. After seeing that evidence, a rational juror

could convict Jackson of distributing the cocaine to the C.I., and intending to do so. *See, e.g.*, *United States v. Hall*, 20 F.4th 1085, 1106 (6th Cir. 2022) (finding evidence sufficient to convict a defendant of conspiracy to distribute controlled substances based in part on testimony that "he sold $60 worth of narcotics to a CI" and that officers "recovered a 'trafficker's amount' of drugs" from his vehicle).

A rational finder of fact could have found that the supposed "flaws" in the evidence identified by Jackson did not undermine the government's case in any significant way. The video was shaky and the time stamp was incorrect, but the jury could see the basic details of the entire encounter. One of the government's witnesses testified that detectives searched the C.I. before and after the controlled buy for any other drugs, and the video and police surveillance confirms that the C.I. had little, if any, opportunity to obtain the cocaine any other way. Although the government did not produce the actual pre-photocopied bills at trial, officers testified they found the bills they had given the C.I. to use in the buy in Jackson's room. In any event, we are required to draw all inferences in favor of the jury's verdict, and thus cannot entertain Jackson's suggestion that we infer an unsupported set of events.

Jackson does not offer argument on the sufficiency of the evidence to convict on Counts Two, Three, and Four, which charge possession with intent to distribute controlled substances, and we conclude a jury could rationally have found the evidence was sufficient to convict on those counts as well. The police found three separate bags of controlled substances in Jackson's hotel room, along with two digital scales and small baggies. Jackson admitted he was the only person staying in the room, which supported an inference that he possessed the drugs found in it. And the quantity of drugs in each of the three bags was consistent with distribution. Taken together, that

evidence was sufficient to convict Jackson of possession with intent to distribute the drugs, even without considering the alleged hearsay.

## IV.

For the reasons set out above, we AFFIRM the district court's judgment.