In the

# United States Court of Appeals

## For the Seventh Circuit

———————————

No. 22-2383

KIBAMBE MWENDAPEKE,

*Petitioner*,

*v.*

MERRICK B. GARLAND, Attorney General of the United States,

*Respondent*.

———————————

Petition for Review of an Order
of the Board of Immigration Appeals.
No. A078-767-766

———————————

ARGUED SEPTEMBER 14, 2023 — DECIDED DECEMBER 7, 2023

———————————

Before ROVNER, HAMILTON, and BRENNAN, *Circuit Judges*.

BRENNAN, *Circuit Judge*. Kibambe Mwendapeke, a permanent resident of the United States and a citizen of the Congo, petitions for review of an order from the Board of Immigration Appeals dismissing his appeal. The Board affirmed an immigration judge's decision that Mwendapeke is removable from the United States because he was convicted of an

aggravated felony crime of violence. Mwendapeke argues that the Board and the immigration judge erroneously categorized complicity to robbery in the first degree under Kentucky law as a crime of violence.

We apply the categorical approach to a state conviction to determine whether it is a "crime of violence" under 18 U.S.C. § 16(a). The crime of complicity to commit first degree robbery subsumes the elements of Kentucky's first-degree robbery statute. That statute meets the level of force required by the Supreme Court and has the required *mens rea* for a "crime of violence" under § 16(a). Further, the Kentucky complicity statute is not overbroad with respect to generic aiding-and-abetting liability. The immigration judge and the Board correctly concluded that Mwendapeke's conviction constituted an aggravated felony, rendering him removable. We therefore deny the petition for review.

## I. Background

Around midnight on January 8, 2013, in the parking lot of an apartment complex, Mwendapeke brandished a handgun and demanded the victim give him everything she had, including a cell phone, jacket, and purse, before returning to his vehicle and fleeing.[1] In September 2016, following a jury trial, Mwendapeke was convicted of the offense of complicity to robbery in the first degree under KY. REV. STAT. ANN. §§ 502.020 & 515.020. He was sentenced to ten years' imprisonment.

---

[1] *Mwendapeke v. Commonwealth*, No. 2015-CA-000361-MR, 2016 WL 4709141 (Ky. Ct. App. Sept. 9, 2016).

In July 2021, the Department of Homeland Security initiated removal proceedings against Mwendapeke under 8 U.S.C. § 1227(a)(2)(A)(iii), based in part on his Kentucky conviction. Mwendapeke moved to terminate the removal proceedings. An immigration judge ruled that the Kentucky statute under which Mwendapeke was convicted is a categorical match for an aggravated felony crime of violence, subjecting him to removal. He appealed, and the Board dismissed on the same ground. Mwendapeke petitions this court to review the Board's decision.[2] He argues that his conviction is not such a categorical match under 8 U.S.C. § 1101(a)(43)(F) and 18 U.S.C. 16(a).

## II. Analysis

Whether an offense is a crime of violence is a question of law subject to *de novo* review, *United States v. Woods*, 576 F.3d 400, 408 (7th Cir. 2009), including whether the petitioner's conviction constitutes an aggravated felony offense rendering the petitioner removable. *Lopez v. Lynch*, 810 F.3d 484, 488 (7th Cir. 2016). Because here the Board adopts the rationale of the immigration judge, we review the immigration judge's decision. *Mabuneza v. Garland*, 16 F.4th 1222, 1226 (7th Cir. 2021).

### A. Complicity is Not a Separate Crime.

We begin by considering the nature of Mwendapeke's criminal liability. Under Kentucky law, complicity is not a crime of its own. Rather, complicity is a theory of criminal

---

[2] The immigration judge had jurisdiction over Mwendapeke's removal proceedings under 8 U.S.C. § 1229a(a)(1). The Board of Immigration Appeals had jurisdiction to hear the appeal under 8 C.F.R. § 1003.1(b)(3). This court has jurisdiction to consider this question of law under 8 U.S.C. § 1252(a)(1) and § 1252(a)(2)(D).

responsibility that subsumes each element of an underlying offense. *Futrell v. Commonwealth*, 471 S.W.3d 258, 277 (Ky. 2015) (collecting cases). A person convicted of complicity to a crime "shares the *mens rea* required of the offense, e.g., intent, and is therefore guilty of committing the offense as is his co-complicitor." *Priddy v. Commonwealth*, 629 S.W.3d 14, 19 (Ky. Ct. App. 2021). "Complicity under Kentucky law is not a separate offense, but instead a theory of liability requiring proof of each element of the underlying offense." *See United States v. Abney*, 817 Fed. App'x 185, 187 (6th Cir. 2020) (Kentucky conviction for complicity in first-degree robbery is an ACCA-predicate offense).

Kentucky Revised Statute "502.020 does not create a new offense known as complicity. It simply provides that one who aids, counsels or attempts to aid another in committing an offense with the intention of facilitating or promoting the commission of the offense is himself guilty of that offense." *Commonwealth v. Caswell*, 614 S.W.2d 253, 254 (Ky. Ct. App. 1981). "[U]nder our penal code 'complicity' is not a separate crime; rather, it is a means by which a crime may be committed. Therefore, a more accurate name for the crime of an accomplice may be 'First-degree Robbery by Complicity.'" *Smith v. Commonwealth*, 370 S.W.3d 871, 873 n.1 (Ky. 2012).

An individual who is found guilty of complicity to a crime has the same status as one guilty of the principal offense. *Commonwealth v. McKenzie*, 214 S.W.3d 306, 307 (Ky. 2007). "[T]he person convicted of complicity is convicted of the underlying crime and is subject to all the consequences thereof." *Priddy*, 629 S.W.3d at 19. "[T]o convict a defendant of guilt by complicity, the jury must find beyond a reasonable doubt that the [principal] offense was, in fact, committed by the person being

aided or abetted by the defendant." *Parks v. Commonwealth*, 192 S.W.3d 318, 327 (Ky. 2006).

With this in mind, we reject Mwendapeke's argument that Kentucky's complicity statute is overbroad with respect to generic aiding-and-abetting liability. In *Gonzalez v. Duenas-Alvarez*, the Supreme Court applied the categorical approach to analyze California's "natural and probable consequences" doctrine underlying California aiding-and-abetting liability, comparing it to a "generic definition of aiding and abetting." *United States v. Gamez*, 77 F.4th 594, 599 (7th Cir. 2023) (citing *Gonzales v. Duenas-Alvarez*, 549 U.S. 183, 190–92 (2007)). "Under a generic definition of aiding and abetting, 'a person aids and abets a crime when (in addition to taking the requisite act) he intends to facilitate that offense's commission.'" *Gamez*, 77 F.4th at 599–600 (quoting *Rosemond v. United States*, 572 U.S. 65, 76 (2014)). In *Duenas-Alvarez*, the Supreme Court concluded that there was nothing "special" about California's aiding-and-abetting liability, so the state's aiding-and-abetting liability "creates [no] sub-species of the [theft] crime that falls outside the generic definition of theft" and the theft offense was not overbroad. 549 U.S. at 193–94.

Here, Mwendapeke argues that Kentucky's complicity statute is overbroad because it allows for liability for (1) omissions rather than affirmative acts, and (2) mere verbal encouragement or support. Neither argument is persuasive. First, Kentucky imposes complicity liability for omissions only where the individual was under a legal duty to act. KY. REV. STAT. ANN. § 502.020(1)(c) (allowing a complicity conviction when the defendant, "[h]aving a legal duty to prevent the commission of the offense, fails to make a proper effort to do so."). It is a "general principle that in criminal law, omission

in the face of a legal duty is a type of action." *United States v. Harrison*, 54 F.4th 884, 889 (6th Cir. 2022) (citing 2 WAYNE R. LAFAVE, SUBSTANTIVE CRIMINAL LAW § 15.4(b) (3d ed. 2022 Update); MODEL PENAL CODE § 2.01). "This general principle … is equally applicable when the crime charged is aiding and abetting." *United States v. Sabhnani*, 599 F.3d 215, 237 (2d Cir. 2010). Second, the Supreme Court has stated that "intentional participation" required for criminal aiding-and-abetting liability "can come in many forms, including abetting, inducing, encouraging, soliciting, or advising the commission of the offense, such as through *words of encouragement* or driving the getaway car." *Twitter, Inc. v. Taamneh*, 598 U.S. 471, 490 (2023) (emphasis added). Consequently, Kentucky's complicity statute is a categorical match for generic aiding-and-abetting liability.

### B. Robbery in the First Degree is a Categorical Match.

Next, we apply the categorical approach to decide if the underlying offense, Kentucky's first-degree robbery statute, § 515.020, is a categorical match to 18 U.S.C. § 16(a) such that Mwendapeke is removable. "[T]o determine whether an alien's conviction qualifies as an aggravated felony under [§ 16(a)], we 'employ a categorical approach by looking to the statute … of conviction, rather than to the specific facts underlying the crime.'" *Esquivel-Quintana v. Sessions*, 581 U.S. 385, 389 (2017). The categorical approach requires courts to assess the minimum conduct required for a conviction under the state statutes in question. If that conduct would not be sufficient for conviction under the generic federal definitions of that crime, the statute is overbroad. *See id.*

Kentucky Revised Statute § 515.020 provides that a person "is guilty of robbery in the first degree when, in the course of

committing theft, he or she uses or threatens the immediate use of physical force upon another person with intent to accomplish the theft… ."[3]

Under the Immigration and Nationality Act, any "alien who is convicted of an aggravated felony at any time after admission is deportable." 8 U.S.C. § 1227(a)(2)(A)(iii). Per that statute an "aggravated felony" includes "a crime of violence, as defined by 18 U.S.C.A. § 16, … for which the term of imprisonment [is] at least one year." 8 U.S.C. § 1101(a)(43)(F). "[C]rime of violence" is defined as "an offense that has as an element the use, attempted use, or threatened use of physical force against the person or property of another." 18 U.S.C. § 16(a). This is the generic federal definition to which we compare § 515.020.

Both the state statute of first-degree robbery, § 515.020, and the federal definition of that crime under 18 U.S.C. § 16(a), include the generic elements of force and *mens rea*. Therefore, to be categorized as a "crime of violence" satisfying 18 U.S.C. § 16(a), § 515.020 must (1) meet the level of force required by

---

[3] Section 515.020 also provides that a defendant must "[c]ause[] physical injury to any person who is not a participant in the crime; or [i]s armed with a deadly weapon; or [u]ses or threatens the immediate use of a dangerous instrument upon any person who is not a participant in the crime." Each of these additional requirements narrow the statute's generic physical force or intent elements, so they do not alter our analysis under the categorical approach. *See Descamps v. United States*, 570 U.S. 254, 261 (2013) ("If the relevant statute has the same elements as the "generic" ACCA crime, then the prior conviction can serve as an ACCA predicate; so too if the statute defines the crime more narrowly, because anyone convicted under that law is "necessarily ... guilty of all the [generic crime's] elements.") (citing *Taylor v. United States*, 495 U.S. 575, 599 (1990)).

the Supreme Court and (2) have the requisite *mens rea* for a "crime of violence."

>      1. *Force*

"[P]hysical force" under 18 U.S.C. § 16(a) means "*violent force—i.e.*, force capable of causing physical pain or injury to another person." *Johnson v. United States*, 559 U.S. 133, 134 (2010). This "does not require any particular degree of likelihood or probability that the force used will cause physical pain or injury; only potentiality." *Stokeling v. United States*, 139 S. Ct. 544, 554 (2019).[4] *See United States v. Chagoya-Morales*, 859 F.3d 411, 421 (7th Cir. 2017) (describing Johnson's "threshold" as "not a high one" because it "did not hold that 'physical force' requires 'a level of force likely to cause serious injury, or traumatic injury,'" but rather, held it "requires only force capable of causing physical pain or injury to another person"). Therefore, "an offense per se satisfies [] *Johnson*'s definition of force if it involves the offender's overcoming the victim's resistance." *Johnson v. United States*, 24 F.4th 1110, 1120 (7th Cir. 2022).

Kentucky courts hold that the level of force required for robbery under § 515.020 is "[a]ny force which is sufficient to take the property against the owner's will." *Boger v. Commonwealth*, 2005 WL 1704079, *2 (Ky. Ct. App. Jan. 11, 2006) (quoting *Commonwealth v. Davis*, 66 S.W. 27, 27 (Ky. 1902)).[5] This

---

[4] *Johnson* and *Stokeling* both addressed the Armed Career Criminal Act, 18 U.S.C. § 924(e)(2)(B)(i), which is nearly identical to 18 U.S.C. § 16(a). For our analysis we treat them as the same.

[5] *Davis* referred to Blackstone's definition of robbery, which states: "the felonious and forcible taking from the person of another of goods or

interpretation fits within the Supreme Court's explanation of force sufficient for a "crime of violence" under 18 U.S.C. § 16(a). The Sixth Circuit reached the same conclusion when it held that "second-degree robbery in Kentucky requires a sufficient level of force to satisfy the elements clause[]." *United States v. Williams*, 39 F.4th 342, 348 (6th Cir. 2022). This is because "robbery occurs when the defendant steals using force sufficient to overcome the victim's will and does not encompass taking without the victim's awareness or without physical force." *Id*. Although not binding, the Sixth Circuit's ruling is persuasive here. *See, e.g., Shepherd v. Krueger*, 911 F.3d 861, 863 (7th Cir. 2018) ("The Sixth Circuit held recently that Kentucky second-degree burglary qualifies as a predicate offense for an ACCA enhancement. … Our colleagues' statutory interpretation and conclusion are persuasive.").

### 2. Mens Rea

The Supreme Court has provided guidance when considering the *mens rea* for a "crime of violence" aggravated felony. "Offenses with a *mens rea* of recklessness do not qualify as violent felonies … ." *Borden v. United States*, 141 S. Ct. 1817, 1834 (2021). Violent felonies "require … the active employment of force against another person." *Id*. "[T]he 'use … of physical force against the person or property of another'—most naturally suggests a higher degree of intent than negligent or

---

money of any value by violence or by putting him in fear." Although *Davis* was decided before Kentucky adopted its current penal code, *Boger* found this definition applicable to the current Kentucky definition of robbery. Further, the court in *Boger* was "persuaded to continue to follow the precedent set in *Davis* as other jurisdictions have more recently analyzed this issue and have made similar findings." *Id*. at *2 n.7 (citing *see, e.g., United States v. Rodriguez*, 925 F.2d 1049, 1052 (7th Cir.1991)).

merely accidental conduct." *Leocal v. Ashcroft*, 543 U.S. 1, 9 (2004).

Kentucky's first-degree robbery offense, § 515.020, has the requisite *mens rea* for a "crime of violence" under 18 U.S.C. § 16(a). The plain language of the Kentucky statute states that the defendant's use or threatened use of physical force upon another person must be committed "with intent to accomplish the theft." KY. REV. STAT. ANN. § 515.020. The preposition "with" directly modifies the force element of the statute. So, the most natural reading of the statute is that the specific "intent to accomplish the theft" is the particular mental state under which the defendant uses or threatens to use force against another person. *See Nielsen v. Preap*, 139 S. Ct. 954, 956 (2019) ("[W]ords are to be given the meaning that proper grammar and usage would assign them.") (quoting A. SCALIA & B. GARNER, READING LAW: THE INTERPRETATION OF LEGAL TEXTS 140 (2012)).

The Sixth Circuit has reached a similar conclusion. *See Williams*, 39 F.4th at 348. There, the defendant made the same argument as Mwendapeke: "The specific intent requirement only applies to the theft and not to the use of force, which … can be done recklessly." *Id.* The Sixth Circuit rejected this argument, based on statutory commentary and Kentucky case law. *Id.* at 348–50. The commentary to Kentucky's robbery statutes states, "an offender must have intended, with his use or threatened use of physical force, to accomplish a theft." *Id.* (citing KY. REV. STAT. ANN. § 515.020, cmt. (1974)). And two Kentucky Supreme Court cases interpreted the "intent to accomplish the theft" *mens rea* of KY. REV. STAT. ANN. § 515.020 as necessarily accompanying the defendant's use or threatened use of force. *See Hobson v. Commonwealth*, 306 S.W.3d 478,

482–83 (Ky. 2010); *Slaven v. Commonwealth*, 962 S.W.2d 845, 857 (Ky. 1997).[6] So, the Sixth Circuit ruled that "[g]iven the statute's plain language, supported by the commentary and caselaw, Kentucky second-degree robbery requires that an individual use force with the specific intent to accomplish theft. Therefore, it is not a crime that can be committed with a *mens rea* of recklessness and is not precluded as [a "crime of violence"] under *Borden*." *Williams*, 39 F.4th at 349–50.

### 3. Taylor *Requirements: Communicative Threats*

Mwendapeke claims the Kentucky robbery statute fails to satisfy the standards set in *United States v. Taylor*, 142 S. Ct. 2015 (2022). *Taylor* separated communicative threats, which are active and intended to threaten, from abstract or atmospheric threats, which are based on the nature of the crime itself. *Id*. at 2022–23. The Supreme Court held that threats must be active and intentional to fall under the definition of "crime of violence." *Id*. This is because the phrase "'threatened use of physical force against the person or property of another' [requires] a communicated threat … ." *Id*. Such an interpretation "fits with" the remainder of the "crime of violence" definition, which "[p]lainly … requires … that the defendant took specific action against specific persons or their property." *Id*. at 2023. Further, the Court in *Taylor* warned against finding that a threat is present based on the nature of the crime. *Id*.

Mwendapeke cites two Kentucky cases he says demonstrate that the state's robbery statute fails to satisfy *Taylor*.

---

[6] We are bound by Kentucky's interpretation of its own laws. *See Johnson v. Fankell*, 520 U.S. 911, 916 (1997) ("Neither this Court nor any other federal tribunal has any authority to place a construction on a state statute different from the one rendered by the highest court of the State.").

*Lewis v. Commonwealth*, 399 S.W.3d 795, 796–97 (Ky. Ct. App. 2013), held that "the threat of physical force … c[ould] be implied by a defendant's conduct," irrespective of whether the defendant intended to communicate the threat to the victim. And *Tunstull v. Commonwealth*, 337 S.W.3d 576, 583 (Ky. 2011), held that physical threats can be implied from the nature of the crime itself. To Mwendapeke, *Lewis* and *Tunstull* considered abstract or atmospheric, rather than communicative threats.

*Lewis* and *Tunstull* do not hold that the robbery statute includes abstract and predictive threats to the overall community. Rather, those decisions show that Kentucky robbery offenses cover both express and implied threats, but those threats must be communicated by the defendant towards a specific person or persons who are the target of the defendant's theft. *Lewis*, 399 S.W.3d at 797; *Tunstull*, 337 S.W.3d at 583.

This aligns with the plain language of the Kentucky statute under which only threats directed toward another specific person are covered, as that language requires proof that the defendant "threatens the immediate use of physical force upon another person." KY. REV. STAT. ANN. § 515.020 (emphasis added). This reading is reinforced by Kentucky's definition of "physical force," which again instructs that "force [be] used upon or directed toward the body of another." KY. REV. STAT. ANN. § 515.010 (emphasis added). Therefore, the defendant must direct his action at, or target, another individual. The robbery statute does not cover an abstract threat.

**C. Complicity to Robbery in the First Degree is a Categorical Match.**

Now to the question on which this case turns: whether conviction for complicity to robbery in the first degree qualifies as an aggravated felony under the categorical approach. Mwendapeke claims that § 502.020 does not categorically constitute a "crime of violence" aggravated felony under 18 U.S.C. § 16(a). His conviction for this crime, he believes, should not render him removable from the United States.

"If the underlying crime has the necessary physical force element and a conviction for complicity requires proof of the underlying crime, then the complicity conviction necessarily includes the physical force element." *United States v. Johnson*, 933 F.3d 540, 547 (6th Cir. 2019). As we decided above, the Board and the immigration judge correctly ruled that Kentucky's first-degree robbery statute meets the level of force, *supra* Part II, B.1, and the requisite *mens rea*, *supra* Part II, B.2, for a "crime of violence" under 18 U.S.C. § 16(a). It follows they properly concluded that Kentucky's complicity to first-degree robbery statute meets the same requirements and categorically matches 18 U.S.C. § 16(a).

Mwendapeke offers various arguments for why the Board and the immigration judge erred in their rulings:

*Defendant-Specific, Active Force.* A crime of violence "involves the 'use … of physical force' against another's person or property." *Leocal*, 543 U.S. at 2. That "requires active employment." *Id*. Mwendapeke points to *Taylor* in support of his claim that 18 U.S.C. § 16(a) requires that the defendant employed the active force. He argues that § 502.020(1) does not satisfy this active employment requirement because under

Kentucky complicity liability a person may be responsible for a crime he has not personally carried out.[7]

According to Mwendapeke, under *Taylor* the categorical approach requires using a defendant-specific statutory analysis, which he says fails here. While the Supreme Court acknowledges that "many who commit the crime of attempted Hobbs Act robbery do use, attempt to use, or threaten to use force," it concluded that "*some* cases are not *all* cases, and the government's problem is that no *element* of attempted Hobbs Act robbery requires the government to prove beyond a reasonable doubt that the defendant used, attempted to use, or even threatened to use force." *Taylor*, 142 S. Ct. at 2022.

But in *Taylor* the Court held that attempted Hobbs Act robbery is not a "crime of violence" because the inchoate crime of attempt only requires proof that the defendant take a "substantial step" toward committing a Hobbs Act robbery. That "substantial step" element does not necessarily require the use, attempted use, or threatened use of force against another person. 142 S. Ct. at 2020–26 (2022). As explained, § 502.020(1) deems the accomplice defendant to have committed every element of the completed principal offense, including its physical force element. In contrast, attempted Hobbs Act robbery is an inchoate offense with separate elements that do not

---

[7] For example, Mwendapeke relies on *Quisenberry v. Commonwealth*, 336 S.W.3d 19, 36 (Ky. 2011) ("[T]he accused need not have … actually participated in any other act of force or violence; it is sufficient that he came and went with the robbers, was present when the robbery was committed, and acquiesced."), and *Young v. Commonwealth*, 426 S.W.3d 577, 582 (Ky. 2014) (regarding complicity through verbal encouragement or support).

require the underlying offense to be completed. Therefore, the statute being analyzed in *Taylor* is distinguishable from the Kentucky statute at hand.

*Binding Precedent*. As noted above, Mwendapeke claims that § 502.020(1) does not satisfy the Supreme Court's active employment requirement. Yet, we have rejected a substantially similar argument, concluding that *Taylor* is inapposite to convictions based on accomplice liability. *United States v. Worthen*, 60 F.4th 1066, 1069 (7th Cir. 2023). Mwendapeke concedes that *Worthen* forecloses his argument based on *Taylor*.

The defendant in *Worthen* contended that his conviction for aiding and abetting a Hobbs Act robbery was not a "crime of violence" because "a defendant can aid and abet a Hobbs Act robbery without personally using force." *Id*. at 1067; 1069. Rejecting this argument, we ruled that "aiding and abetting under [18 U.S.C.] § 2 is 'not a separate federal crime' from the underlying offense, but is instead an alternative theory of liability for the commission of the principal offense." *Id*. at 1069–70. We explained that "convicting an aider or abettor first requires showing that the underlying crime … 'was actually committed,'" therefore, "an aider and abettor of a Hobbs Act robbery necessarily commits all the elements of a principal." *Id*. "And because the principal offense of Hobbs Act robbery satisfies the force clause … aiding and abetting a Hobbs Act robbery qualifies as a crime of violence too." *Id*. at 1070.

Complicity under Kentucky law, like aiding and abetting under federal law, requires proof that the underlying crime was actually committed. This court's reasoning in *Worthen* applies equally to this case. "That is what it means to say that the law does not distinguish between primary violators and aiders and abettors." *Id*.

*Plain Language.* Even without *Worthen* as precedent, Mwendapeke's "defendant-specific manner" claim does not comport with the plain language of the statutory definition of "crime of violence" in 18 U.S.C. § 16(a). That definition does not require proof that the defendant himself used, attempted to use, or threatened to use physical force. Rather, it only requires that the "offense … has as an element" such conduct. *Id*. "[T]he force need not be exerted by the defendant. All the elements clause requires is that the offense—here, complicity to commit [first degree robbery]—necessarily involve the use of force." *Harrison*, 54 F.4th at 895 (Cole, J., concurring); *see also id.* at 890.

The statutory language of the aggravated-felony ground of removal in 8 U.S.C. § 1227(a)(2)(A)(iii) also does not support Mwendapeke's suggested method for conducting the categorical approach. That statutory subsection requires that Mwendapeke be "convicted of an aggravated felony," which means deciding whether he has been convicted of "an offense that has an element the use, attempted use, or threatened use of physical force against the person or property of another" for which the term of imprisonment was at least one year. 8 U.S.C. § 1227(a)(2)(A)(iii); 18 U.S.C. § 16(a); 8 U.S.C. § 1101(a)(43)(F).

The focus of the "crime of violence" categorical inquiry is on whether the convicted offense includes "the use, attempted use, or threatened use of physical force" as an element, not on whether the individual who is charged with removal was convicted of a crime in which he personally used, attempted to use, or threatened to use physical force against the person or property of another. *See Harrison*, 54 F.4th 890.

## III. Conclusion

Kentucky's complicity to first-degree robbery statute, KY. REV. STAT. ANN. § 502.020(1), is a categorical match to a "crime of violence" aggravated felony under 18 U.S.C. § 16(a). So, the immigration judge and the Board of Immigration Appeals correctly decided that Mwendapeke's conviction for that crime rendered him subject to removal.

For these reasons, we DENY the petition for review.