In the

# United States Court of Appeals

## For the Seventh Circuit

No. 25-1049

MOHAMED IBRAHIM HASSAN,

*Petitioner,*

*v.*

PAMELA J. BONDI, Attorney General of the United States,

*Respondent.*

Petition for Review of an Order of the
Board of Immigration Appeals.
A094-662-067.

ARGUED FEBRUARY 10, 2026 — DECIDED MARCH 16, 2026

Before EASTERBROOK, SCUDDER, and KIRSCH, *Circuit Judges*.

SCUDDER, *Circuit Judge*. The Department of Homeland Security initiated removal proceedings against Mohamed Ibrahim Hassan because it believed he had been convicted of an aggravated felony. It pointed to his conviction under Section 514.110 of the Kentucky Revised Statutes, which prohibits the receipt of stolen property. We must decide whether the Kentucky statute categorically matches the federal definition for aggravated felony receipt of stolen property. The federal

definition requires showing that the defendant had a subjective knowledge or belief that the property was stolen. But we cannot confidently discern whether Section 514.110 of Kentucky law requires something less. We certify this question to the Kentucky Supreme Court.

**I**

Mohamed Ibrahim Hassan is a lawful permanent resident of the United States. In March 2019, he pleaded guilty to attempting to receive stolen property in violation of Kentucky law. See K.R.S. §§ 514.110, 506.010. A few years later, in October 2022, the Department of Homeland Security served him with a Notice to Appear in immigration court. DHS charged Hassan with removability under 8 U.S.C. § 1227(a)(2)(A)(iii), which provides that "[a]ny alien who is convicted of an aggravated felony at any time after admission is deportable."

Hassan moved to terminate the removal proceedings. He contended that Section 514.110 of the Kentucky Revised Statutes prohibited some conduct that would not count as a federal aggravated felony. The immigration judge agreed and granted his motion. The Board of Immigration Appeals disagreed and reversed.

Hassan then petitioned for our review. He claims that his Kentucky conviction does not qualify as an aggravated felony for federal immigration purposes and that it therefore cannot make him removable from the United States. We have jurisdiction to review this "question[] of law." *Oluwajana v. Garland*, 33 F.4th 411, 414 (7th Cir. 2022) (quoting 8 U.S.C. § 1252(a)(2)(D)).

## II

Under the Immigration and Nationality Act, DHS "may remove noncitizens for a variety of reasons, including if they commit an 'aggravated felony at any time after admission' to the United States." *Aguirre-Zuniga v. Garland*, 37 F.4th 446, 449 (7th Cir. 2022) (quoting 8 U.S.C. § 1227(a)(2)(A)(iii)). Congress has defined "aggravated felony" to include many different types of generic crimes. See 8 U.S.C. § 1101(a)(43).

To determine whether a noncitizen has committed an aggravated felony, courts "employ a categorical approach by looking to the statute … of conviction, rather than to the specific facts underlying the crime." *Esquivel-Quintana v. Sessions*, 581 U.S. 385, 389 (2017) (cleaned up). This approach "requires courts to assess the minimum conduct required for a conviction under the state statutes in question." *Mwendapeke v. Garland*, 87 F.4th 860, 867 (7th Cir. 2023). "If that conduct would not be sufficient for conviction under the generic federal definitions of that crime, the statute is overbroad." *Id.*

Congress included within the list of generic crimes that count as an aggravated felony "a theft offense (including receipt of stolen property) … for which the term of imprisonment [is] at least one year." 8 U.S.C. § 1101(a)(43)(G). We have defined this offense as the "taking of property or an exercise of control over property without consent with the criminal intent to deprive the owner of rights and benefits of ownership, even if such deprivation is less than total or permanent." *Hernandez-Mancilla v. INS*, 246 F.3d 1002, 1009 (7th Cir. 2001). When it comes to the receipt of stolen property, both parties agree that someone acts with the requisite criminal intent only if they have a subjective "knowledge or belief" that the property was stolen. *Khan v. Garland*, 69 F.4th 265, 269 (5th Cir.

2023) (quoting *In re Deang*, 27 I. & N. Dec. 57, 61, 63 (B.I.A. 2017)).

We must decide if Section 514.110 of Kentucky law requires the same mental state. The statute provides that "[a] person is guilty of receiving stolen property when he or she receives, retains, or disposes of movable property of another knowing that it has been stolen, *or having reason to believe that it has been stolen*, unless the property is received, retained, or disposed of with intent to restore it to the owner." K.R.S. § 514.110 (emphasis added).

Various federal courts have suggested that a criminal defendant can have reason to believe that something was stolen without having a subjective knowledge or belief on the point. See, *e.g.*, *United States v. Flores*, 901 F.3d 1150, 1160 (9th Cir. 2018) ("A mens rea equivalent to the presence of a reason to believe that the property had been stolen is insufficient."); *Khan*, 69 F.4th at 268–70 (agreeing that "Pennsylvania courts have not created a jurisprudential 'reason to believe' standard and that [the state statute] requires purely subjective knowledge or belief that an item is stolen" instead); accord *In re Deang*, 27 I. & N. Dec. at 63 ("We cannot infer that a violator who received property with a 'reason to believe' that the property was stolen … *intended* to deprive the true owner of the rights and benefits of ownership."). But the meaning of Section 514.110's "reason to believe" standard is a question of Kentucky law. We therefore look to the Kentucky Supreme Court for guidance.

Kentucky case law supplies no clear answer. In *Commonwealth v. Griffin*, the Kentucky Supreme Court suggested that the "reason to believe" standard may be purely objective. 759 S.W.2d 68, 69 (Ky. 1988). A jury convicted William Griffin

of violating Section 514.150, which prohibits the possession of stolen mail when someone acts "knowingly or having reason to believe" that the mail was stolen. K.R.S. § 514.150; see *Griffin*, 759 S.W.2d at 69. The trial court instructed the jury to convict if it found that Griffin "knew or had reason to believe" as much. *Griffin*, 759 S.W.2d at 69. An intermediate court of appeals reversed the conviction because it thought this instruction violated a state statute requiring nearly all criminal laws to punish only conduct engaged in "intentionally, knowingly, wantonly or recklessly." *Id.* (quoting K.R.S. § 501.030). The Kentucky Supreme Court disagreed, reasoning that "[t]he phrase 'or had reason to believe' as used in the instructions [was] within the meaning of the statutory term 'knowingly.'" *Id.* It explained that Griffin was "held to know that which any reasonable person so situated would have known." *Id.*

To our eye, *Griffin*'s explanation of the "reason to believe" standard looks like what we have called "constructive knowledge." *Pressley v. Haeger*, 977 F.2d 295, 297 (7th Cir. 1992). Constructive knowledge is not actual knowledge. See *id.* It instead refers to the knowledge someone "should have acquired … through reasonable diligence." *Allen v. City of Chicago*, 865 F.3d 936, 938 (7th Cir. 2017). On this view, a Kentucky jury could convict someone of violating Section 514.110 upon finding that a reasonable person would have connected the dots and known or believed that the received property was stolen. It would not need to take the added step of finding, if only by inference, that the defendant subjectively knew or believed as much.

But *Griffin* is not the only pertinent precedent. More recently, in *Martin v. Commonwealth*, the Kentucky Supreme Court suggested that *Griffin* was all about deliberate

ignorance. See 96 S.W.3d 38, 62 (Ky. 2003). It explained that statutes like Section 514.150, which "require only something similar to constructive knowledge," "are premised upon a recognition that 'wilful blindness' is equivalent to knowledge." *Id.* (citing Robert G. Lawson & William H. Fortune, *Kentucky Criminal Law* § 2-2(c)(1) (Lexis 1998); Rollins M. Perkins, *Criminal Law*, ch. 7, § 4C (2d ed. Found. Press 1969)). As a result, "*Commonwealth v. Griffin* … held that the *mens rea* element of 'knowingly or having reason to believe' in KRS 514.150 was sufficient to uphold a criminal conviction." *Martin*, 96 S.W.3d at 62.

On its face, *Martin*'s gloss on *Griffin* resembles what we have called an "ostrich" instruction. *Pressley*, 977 F.2d at 297. These instructions inform juries that they "may find that the defendant acted knowingly if [they] find beyond a reasonable doubt that he believed it was highly probable that [the relevant fact was true] and that he took deliberate action to avoid learning that fact." *The William J. Bauer Pattern Criminal Jury Instructions of the Seventh Circuit* § 4.10 (2023). They clarify that "a person may not escape criminal liability by pleading ignorance if he knows or strongly suspects he is involved in criminal dealings but deliberately avoids learning more exact information about the nature or extent of those dealings." *United States v. Tantchev*, 916 F.3d 645, 652–53 (7th Cir. 2019) (cleaned up). Deliberate ignorance counts as a form of actual knowledge in the federal system. See *Pressley*, 977 F.2d at 297. So Section 514.110 may not be overbroad if its "reason to believe" standard merely captures deliberate ignorance.

But deliberate ignorance may mean something different in the federal system than it does in Kentucky. In the federal system, "[t]he focus of the ostrich instruction is on the

particular defendant, and not a reasonable person." *United States v. Carrillo*, 435 F.3d 767, 782 (7th Cir. 2006). "It asks whether the defendant deliberately avoided knowledge by shutting his or her eyes," and it "should only be given where there are facts and evidence that support an inference of deliberate ignorance." *Id.* (cleaned up). Evidence that "a reasonable person would have been strongly suspicious, or that a defendant should have been aware of criminal knowledge," "does not support an inference that a particular defendant was deliberately ignorant." *Id.* We therefore expressly distinguish between deliberate ignorance and constructive knowledge. See *Pressley*, 977 F.2d at 297.

*Martin* suggests that when it comes to Kentucky law, a jury may find deliberate ignorance based on "something similar to constructive knowledge." 96 S.W.3d at 62. More specifically, the jury may find that a defendant was deliberately ignorant of anything "which any reasonable person so situated would have known." *Griffin*, 759 S.W.2d at 69. This understanding of deliberate ignorance would make Section 514.110 overbroad compared to the federal definition of aggravated felony theft.

No other Kentucky Supreme Court or Court of Appeals case answers whether convicting someone under Section 514.110 requires finding they had a subjective knowledge or belief that the received property was stolen. The cases discussing Section 514.110 do not resolve whether the mental state requirement is subjective or objective. See, *e.g.*, *Conyers v. Commonwealth*, 530 S.W.3d 413, 424 (Ky. 2017) ("Receiving stolen property requires proof of the retention or disposition of property with the knowledge that the property has been stolen."); *Lawson v. Commonwealth*, 85 S.W.3d 571, 577 n.11

(Ky. 2002) (explaining that the Kentucky General Assembly amended Section 514.110 "to include persons 'having reason to believe that it has been stolen'" in an effort "to extend the culpable mental state" covered by the statute (quoting 2000 Ky. Acts Ch. 490, § 2)). Out of respect for the province of the Kentucky Supreme Court, we are hesitant to offer an answer.

So we invite the Kentucky Supreme Court to "illuminate a clear path on the issue." *Allstate Ins. Co. v. Menards, Inc.*, 285 F.3d 630, 639 n.18 (7th Cir. 2002) (cleaned up). Rule 50 of the Kentucky Rules of Appellate Procedure provides that certification to the Kentucky Supreme Court is permissible if we are faced with a question of Kentucky law that "may be determinative of the cause" and "it appears … that there is no controlling precedent in the decisions of the Supreme Court and the Court of Appeals" of Kentucky. Ky. R. App. P. 50(A).

This case meets those criteria. First, the mental state required by Section 514.110 determines whether Hassan's statute of conviction is a categorical match to a federal aggravated felony, making him removable from the United States. Second, *Martin*'s description of *Griffin* leaves us "genuinely uncertain" as to the exact finding a jury must make to convict a defendant under Section 514.110. *In re Hernandez*, 918 F.3d 563, 570 (7th Cir. 2019) (cleaned up).

This question also presents "an important issue of public concern" and is "likely to recur." *Martin v. Goodrich Corp.*, 95 F.4th 475, 481 (7th Cir. 2024) (cleaned up). The government routinely contends that state law convictions fall within the federal definition of receipt of stolen property. See, *e.g.*, *Chmukh v. Garland*, 124 F.4th 670, 676–78 (9th Cir. 2024); *Khan*, 69 F.4th at 267; *Flores*, 901 F.3d at 1154; *In re Deang*, 27 I. & N.

Dec. at 58. We have no doubt this issue will arise again in Kentucky.

For these reasons, we certify the following question to the Kentucky Supreme Court:

> Does Section 514.110 of the Kentucky Revised Statutes require a subjective knowledge or belief that the received property was stolen? More specifically, could a Kentucky jury convict a defendant under Section 514.110 merely by finding that a reasonable person would have known the property was stolen, even absent any evidence that the defendant deliberately avoided that knowledge?

By offering this specific framing, we do not intend to limit the scope of the Kentucky Supreme Court's inquiry. We welcome any guidance from the Justices.

QUESTION CERTIFIED.